UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BRADLEY G. MCCROSKEY,<br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of<br>the Social Security Administration,<br>    Defendant. | CAUSE NO.: 1:20-CV-132-PPS-JEM |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Brandon McCroskey on March 26, 2020, and Plaintiff's Brief [DE 24], filed November 12, 2020. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On January 25, 2021, the Commissioner filed a response, and on February 18, 2021, Plaintiff filed a reply.

On June 1, 2020, Judge Philip P. Simon entered an Order [DE 10] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant Motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the decision of the Administrative Law Judge be reversed and remanded.

**I.   Background**

On May 22, 2017, Plaintiff filed an application for benefits alleging disability beginning March 1, 2016. Plaintiff's application was denied initially and upon reconsideration. On November

1

29, 2018, Administrative Law Judge ("ALJ") Frederic Roberson held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On November 29, 2018, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2017.

2. The claimant has not engaged in substantial gainful activity since March 1, 2016, the alleged onset date.

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease ("COPD"), vasovagal/situational syncope, and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except: can occasionally climb ramps and stairs, can never climb ladders, ropes, or scaffolds; occasional balancing, stooping and kneeling; no crouching or crawling, must avoid concentrated exposure to dusts, fumes, gases, excessive heat, excessive cold, humidity, cleaning chemicals, perfumes, and other respiratory irritants; must also avoid concentrated exposure to wet and uneven surfaces, dangerous machinery, and unprotected heights.

6. The claimant is unable to perform any past relevant work.

7. The claimant was a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.

2

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2016, through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d

3

614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ failed to account for his syncopal events in the RFC or explain how they would affect his ability to work and that the ALJ's conclusion that Plaintiff could perform the exertion requirements of light work is not supported by substantial evidence. The Commissioner argues that the opinion is supported by substantial evidence.

4

The ALJ found that Plaintiff's vasovagal/situational syncope was a severe impairment, which means it is "an impairment or combination of impairments that significantly limits one's physical or mental ability to do basic work activities." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting 20 C.F.R. § 404.1520(c)) (quotation marks omitted). Plaintiff's treating cardiac electrophysiologist wrote that Plaintiff "has situational syncope (fainting) associated with cough spells" and that "the fainting spells are secondary to the severe cough linked to the severe asthma," which was uncontrolled and "resistant to any attempt at therapy," leading to the recommendation that he "not put himself in circumstances w[h]ere coughing spells and syncopal events could be resulting in harm to himself and others" because his symptoms cause "clear and present danger. . . including a sudden loss of consciousness with little prodromes when the severe coughing spells occur." AR 349-50. Similarly, Plaintiff's family practice physician opined, "Due to the potential for syncopal events, he cannot drive and is unemployable until further notice." AR 348.

The ALJ did not give weight to these treating physicians' assessments because similar letters were submitted in support of Plaintiff's previous disability applications and "[w]ithout more information, [the ALJ is] unable to find these letters are an updated analysis of the relevant period that provide a current assessment of the claimant's residual functional capacity." AR 45-46. He found the opinion of a nurse practitioner only "partially persuasive" because the determination that Plaintiff "was able to do activities of daily living without limitation" is "inconsistent" with her assessment that Plaintiff cannot work. AR 45. He also found the state agency reviewing physician opinion "unpersuasive." AR 46. Although the ALJ is no longer required to "give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record," *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th

5

Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2)) (replaced by 20 C.F.R. § 404.1520c for claims filed after March 27, 2017), he was still required to analyze a number of factors and thoroughly explain the weight given their opinion. 20 C.F.R. § 404.1520c. However, he did not find any of the medical opinions in the record more than "partially persuasive," leaving the Court unable to determine the medical basis for his determination of Plaintiff's job-related limitations. *O'Connor-Spinner*, 627 F.3d at 618 (ALJ "must provide a 'logical bridge' between the evidence and his conclusions").

The ALJ described several syncopal episodes suffered by Plaintiff, including one in which Plaintiff received "a 'very mild' compression fracture that was stable and did not require surgery" and noted that Plaintiff "testified he had another episode shortly before the hearing, and the evidence shows a hospital visit for a closed head injury" but disregarded the injury as indicative of any limitations because "treatment notes do not include specific details about the incident and essentially just include a diagnosis and generic educational material describing how to take care of a head injury." AR 45. However, as Plaintiff argues, the ALJ assessed the medical records regarding the closed head injury and the spinal fracture without the benefit of a medical expert. The agency reviewing physicians did not have the records from either of the syncope-related injuries, nor does it appear that they reviewed the opinions of Plaintiff's medical sources indicating that the episodes rendered him unable to work. The ALJ discounted that opinion, thereby avoiding the error of relying on an outdated medical assessment, *see Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) ("An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion."), but instead appears to have relied on his own assessment of the hospital visits and medical records. "ALJs are not qualified to evaluate medical records themselves, but

6

must rely on expert opinions." *Id*. at 729 (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (remanding because the ALJ improperly "played doctor"); *see also Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) ("without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were "consistent" with his assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) ("Fatally, the administrative law judge failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence. . . . Instead, playing doctor (a clear no-no, as we've noted on numerous occasions), the administrative law judge summarized the results of the 2010 MRI in barely intelligible medical mumbo jumbo . . .").

Even assuming that his analysis of the medical evidence was accurate, the Court cannot trace the logic between his analysis and his conclusions about Plaintiff's work-related limitations. In explaining how he incorporated the impairment into the RFC, the ALJ explained that Plaintiff's "syncopal episodes inform limitations related to working around wet and uneven surfaces, dangerous machinery, and unprotected heights." AR 46. Although these limitations are designed to keep Plaintiff from grievous injury when he has a syncopal event, the limitation does not take into account time off-task while Plaintiff has a coughing fit and faints. When asked how episodes of syncope would affect ability to maintain competitive employment, the Vocational Expert responded that "it would depend on the duration" of the episode "[b]ut if we've got somebody that's doing entry-level unskilled work and they're passing out a time or two a week, I think . . . that's going to be a significant issue. . . . I don't think he could generally keep passing out at work and [] keep an entry-level unskilled job." AR 86.

7

The Court is also concerned by the ALJ's statement intentionally "highlight[ing] the myriad notations mentioning the claimant's refusal to cease his continued smoking habit," suggesting that his lung disease would be treatable and therefore his syncopal events would cease if he stopped smoking. AR 44. However, "it is extremely tenuous to infer from the failure to give up smoking that the claimant is incredible when []he testifies that the condition is serious or painful." *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000); *see also Rousey v. Heckler*, 771 F.2d 1065, 1069-70 (7th Cir. 1985). Even people with disorders caused by smoking may "continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts their ability to stop." *Shramek*, 226 F.3d at 813. The ALJ is reminded of the requirement to "consider and address reasons for not pursuing treatment that are pertinent to an individual's case," SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017), rather than disbelieving Plaintiff's reported symptoms because of his continued use of tobacco products.

The ALJ substituted his medical judgment for that of trained physicians, discounted their opinions without sufficient explanation, and failed to supplement the record with a medical expert who had examined all of the relevant medical evidence. He also failed to draw a logical bridge between the repeated notes that Plaintiff will continue to have syncopal episodes when he has a coughing spell, and will continue to have coughing spells and syncopal events so long as he suffers from lung disease, to the conclusion that Plaintiff is unlikely to have syncopal episodes that affect his ability to remain on task at work. The Court recommends that this case be remanded for a thorough analysis of up-to-date opinions by medical experts. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical

8

support is not readily discernable.") (citing 20 C.F.R.§ 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§ 404.1512(d)(1), 416.919(b)); *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000)) (holding that the ALJ's error in interpreting MRI results could have been avoided by seeking an updated medical opinion).

.    **IV.   Conclusion**

For the foregoing reasons, the Court **RECOMMENDS** that the District Court **GRANT** the relief requested in Plaintiff's Brief [DE 24] and **REMAND** this matter for further proceedings consistent with this Report and Recommendation.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 10th day of June, 2021.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:   All counsel of record
      Judge Philip P. Simon